UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ERIC. D. B.,[1] | ) | CIVIL ACTION NO. 4:23-CV-0474 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| MARTIN O'MALLEY, *Social Security* | ) | |
| *Commissioner*,[2] | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Eric D. B., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3) (incorporating  42 U.S.C. §405(g) by reference).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] To protect the privacy interests of plaintiffs in social security cases, I have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

[2] Martin O'Malley became the Commissioner of Social Security on December 20, 2023. He is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d); *see also* 42 U.S.C. § 405(g).

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is not supported by substantial evidence. Accordingly, the Commissioner's final decision will be VACATED. This result turns on the ALJ's decision to discount all medical opinions of record about Plaintiff's ability to use his fingers to manipulate small objects and the ALJ's improper engagement in lay interpretation of the medical evidence.

## II.  BACKGROUND & PROCEDURAL HISTORY

On May 24, 2018, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 747; Doc. 10-9, p. 5).  In this application, Plaintiff alleged he became disabled on December 24, 2009, when he was 34 years old, due to the following conditions: head injury, brain atrophy, degenerative disc disease, cervicalgia, depression, fibromyalgia, and headaches. (Admin. Tr. 224; Doc. 10-6, p. 6). Plaintiff alleges that the combination of these conditions affects his ability to lift, squat, bend, stand, reach, walk, sit, kneel, talk, climb stairs, remember, complete tasks, concentrate, use his hands, and get along with others. (Admin. Tr. 246; Doc. 10-6, p. 28). Plaintiff has at least a high school education. (Admin. Tr. 698; Doc. 10-8, p. 24). Before the onset of his impairments, Plaintiff worked as a an injection molder. (Admin. Tr. 697; Doc. 10-8, p. 23).

On November 29, 2018, Plaintiff's application was denied at the initial level of administrative review.[3] (Admin. Tr. 747; Doc. 10-9, p. 5). On December 12, 2018, Plaintiff requested an administrative hearing. (Admin. Tr. 747; Doc. 10-9, p. 5).

On July 11, 2019, Plaintiff, assisted by his counsel, appeared and testified during a hearing before Administrative Law Judge Michele Stolls (the "ALJ"). (Admin. Tr. 936-979; Doc. 10-12, pp. 13-56). On August 5, 2019, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 761; Doc. 10-9, p. 19). On September 26, 2019, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 184; Doc. 10-4, p. 26).

On September 10, 2020, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1; Doc. 10-2, p. 2).

---

[3] This is not Plaintiff's first application for benefits. In August 2013, Plaintiff filed applications for benefits under Titles II and XVI of the Social Security Act alleging that he became disabled on December 31, 2009 as a result of the following impairments: head injury, compression fractures of C1 and L1, depression, fibromyalgia, walking/gait disturbance, fatigue, loss of motor skills and fine motor skills on his right side, cognitive difficulties, heat sensitivity, ligament damage in his left knee, herniated discs, migraines, sciatica, and arthritis. These applications were denied at all levels of administrative review, and Plaintiff appealed to this Court for judicial review. Complaint, *Bair v. Colvin*, No. 3:16-CV-1331, (M.D. Pa. June 28, 2016), ECF No. 1. The undersigned issued a Report and Recommendation affirming the Commissioner's decision (*Id*. at ECF No. 16) which was adopted in an Order by Judge Mariani (*Id*. at ECF No. 19). Plaintiff then "decided to refile for just SSI, this time with better evidence, rather than appeal." (Doc. 11, p. 2).

On October 23, 2020, Plaintiff filed a complaint in the district court.[4] (Admin. Tr. 772-776; Doc. 10-9, pp. 30-34). On February 16, 2022, the undersigned issued a Report and Recommendation recommending remand of the case. (Admin. Tr. 777-801; Doc. 10-9, p. 35-59). On March 7, 2022, Judge Mannion adopted that Report and Recommendation in its entirety and the case was remanded to the Commissioner. (Admin. Tr. 803-805; Doc. 10-9, pp. 61-63). On September 2, 2022, the Appeals Council issued an Order remanding the case back to an Administrative Law Judge. (Admin. Tr. 807-809; Doc. 10-9, pp. 65-67).

On December 14, 2022, Plaintiff, assisted by his counsel, appeared and testified during a hearing before the ALJ. (Admin. Tr. 707-743; Doc. 10-8, pp. 33-69). On January 11, 2023, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 679-699; Doc. 10-8, pp. 5-25).

On March 17, 2023, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the application is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court award benefits as opposed to remand due to the passage of a decade since Plaintiff originally applied. (Doc. 1, p. 2).

---

[4] *Bair v. Kijakazi*, No. 4:20-CV-1970, (M.D. Pa. Oct. 26, 2020), ECF. No. 1.

On May 16, 2023, the Commissioner filed an answer. (Doc. 9). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 9). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 10).

Plaintiff's Brief (Doc. 11), the Commissioner's Brief (Doc. 13), and Plaintiff's Reply (Doc. 15) have been filed.  This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[5] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable

---

[5] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

mind might accept as adequate to support a conclusion."[6] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[7] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[8] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[9] In determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[10]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

---

[6] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[7] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[8] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[9] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[10] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South, LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[11]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[12] In doing so, however, the court is enjoined to refrain from

---

[11] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[12] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[13]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[14]

## B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[15] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible

---

[13] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

[14] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[15] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

to do his or her previous work or any other substantial gainful activity that exists in the national economy.[16]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[17] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[18]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[19] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[20]

---

[16] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

[17] 20 C.F.R. § 416.920(a).

[18] 20 C.F.R. § 416.920(a)(4).

[19] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[20] 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[21]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[22]

## IV.   DISCUSSION

Plaintiff raises the following issues in his statement of errors:

(1)   There is a lack of substantial evidence supporting the ALJ's decision.

(Doc. 11, p. 10). We construe Plaintiff's brief as asserting that the ALJ's decision is unsupported by substantial evidence because she discounted all the medical opinions in the record as to her fingering RFC finding and engaged in lay interpretation of the medical evidence.

### A.   THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

In her January 2023 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

---

[21]42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[22] 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between December 24, 2009 (Plaintiff's alleged onset date) and January 11, 2023 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 679, 699; Doc. 10-8, pp. 5, 25).

At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: degenerative disc disease of the lumbar spine and radiculopathy with mild compression deformity; fibromyalgia; migraines/occipital headaches/bilateral occipital neuralgia; traumatic brain encephalopathy and traumatic brain injury with frontal temporal lobe atrophy and other frontotemporal dementia; mild neurocognitive disorder/cognitive slowing/memory deficit status post craniotomy and frontal hematoma evacuation; major depressive disorder; post-traumatic stress disorder; generalized anxiety disorder; personality disorder due to brain injury/schizoid personality disorder; and mild left median nerve neuropathy. (Admin. Tr. 681; Doc. 10-8, p. 7).

At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 684-687; Doc. 10-8, pp. 10-13).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in sedentary work as defined in 20 C.F.R. § 416.967(a) except:

> the claimant is limited to occupations that require no more than occasional postural maneuvers, such as balancing, stooping, kneeling, crouching and climbing on ramps and stairs, but must avoid occupations that require climbing on ladders, ropes and scaffolds or crawling. The claimant limited to occupations that require no more than occasional pushing or pulling with the upper extremities to include the operation of hand levers. The claimant must avoid concentrated prolonged exposure to fumes, odors, dusts, gases, chemical irritants, environments with poor ventilation, temperature extremes, vibration, or extreme dampness and humidity. The claimant is limited to occupations which do not require exposure to hazards such as dangerous machinery and unprotected heights. The claimant must avoid exposure to occupations that present noise levels above level 3 (which is moderate). The claimant is limited to occupations that require the claimant to understand, remember and carry out simple instructions and make simple work-related decisions. The claimant is limited to occupations that require the claimant to deal with occasional changes in a routine work setting. The claimant is limited to occupations which require no more than occasional interaction with supervisors or coworkers and no interaction with members of the general public.

(Admin. Tr. 687; Doc. 10-8, p. 13).

At step four, the ALJ found that, during the relevant period, Plaintiff could not engage in his past relevant work. (Admin. Tr. 697; Doc. 10-8, p. 23).

At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 698-699; Doc. 10-8, pp. 24-25). To support her conclusion,

the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: a document preparer (DOT# 249.587-018); an addressing clerk (DOT# 209.587-010); and a table worker (DOT# 739.687-182). (Admin. Tr. 698; Doc. 10-8, p. 24).

B. **WHETHER SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RESIDUAL FUNCTIONAL CAPACITY DETERMINATION**

The point of contention in this case concerns the ALJ's determination as to Plaintiff's ability to use his hands, specifically his ability to finger (fine manipulation). Plaintiff argues broadly that "there is a lack of substantial evidence supporting the ALJ's decision." (Doc. 11, p. 10). More specifically Plaintiff argues:

> The basis for the remand back to Social Security was the absence of records or medical evidence or opinion refuting Dr. Bonita's conclusion that claimant was limited in the use of his hands. Evidence in the record supporting Dr. Bonita's conclusions are records indicating lack of muscle control and weakness of the right upper extremity, TR 380, 593, deformity of the left shoulder, TR 356, bilateral hand tremors, TR 373, cervical spasms, TR 351, weakness and cramps in the hands, TR 498, hand tremor, limited grip strength, and difficulty with buttons, TR 502.
>
> Social Security Administrative Law Judges have it within their power to send claimants for medical examinations. When the basis for the remand was the absence of medical substantiation for Dr. Bonita's opinion concerning limitations on claimant's use of his hands and arms (limitations supported by all of the other doctors in the record who opined on this issue) it would seem reasonable for the ALJ to have sent claimant for an examination by a physician with some expertise on this issue. The combination of frontotemporal brain damage, cervical disc herniation, median nerve neuropathy, along with fibromyalgia and chronic pain could certainly cause an inability to consistently perform a job requiring use of hands and arms on an eight hour per day 40 hour

per week basis. It would be worthwhile to get a doctor's opinion on that. But ALJ Stolls just gives us her own opinion. The absence of reference to medical opinion supporting her conclusions is notable in ALJ Stolls' decision. But that absence of medical evidence supporting her conclusions is because there isn't any in the record . . . .

. . . .

Notwithstanding the revision in 20 CFR 404.1520 eliminating the treating physician presumption, ALJs are still required to base their decisions on competent medical evidence, as opposed to lay speculation. "In a slew of decisions, the Third Circuit holds that no reasonable mind would find the ALJ's evidence to be adequate when the ALJ rejects every medical opinion in the record with only lay reinterpretation of medical evidence." Burns vs. Colvin, 156 F. Supp 579, 583 (1988) and cases cited therein. Cases requiring medical evidence to sustain an ALJ's decision subsequent to the revision of the regulation include Garcia-Sierra v. Kijakazi 2023 WL 125082 (ED PA, 2023); Thomas v. Kijakazi, 2022 WL 17880922 (ED PA, 2022)

Under the revised regulation, the primary factors the ALJ or the court looks to in determining the weight to be given medical evidence are consistency and sustainability. "Consistency concerns the degree to which the opinion reflects the same limitations described in evidence from other sources, whereas supportability concerns the relevance of objective medical evidence and degree of explanation given by the medical source to support the limitations assessed in the opinion. Weidner v. Kijakazi 2022 WL 610702 at 11 (DDel., 2020) Plaintiff contends that the opinions of Dr. Chang, the plaintiff's current treating physician, are reasonably consistent with the records from Dr. Nase, Dr. Olinsky, Dr. Coons, Dr. Dowell, Dr. Bonita Dr., Osman, and the psychologist Gillum. All these medical opinions are supported by the objective medical evidence in the medical records revealing brain atrophy, herniated discs, fibromyalgia trigger points and neuropathy. It is notable that in critiquing the medical opinions and evidence in the file, the ALJ doesn't hold them up against contrary medical evidence, because it isn't there.

ALJ Stolls' analysis of Dr. Lindsay's limitations is typical of her treatment of medical evidence supporting the claim of disability. She notes that Dr. Lindsay found the claimant "had a slight reduction in grip strength bilaterally (4 out of 5) and a tremor in the fingers. The claimant was noted to maintain intact hand and finger dexterity but be limited in strength and was noted to have a difficult time buttoning a button and tying a shoe but being able to zip and use a Velcro strap." TR 691. This is consistent with opinions from Drs Chang and Bonita. The ALJ seeks to rebut this not with contrary medical evidence, but by stating her lay opinion that "the slight reduction in grip and related deficits to buttons and shoe tying do not support a reduction to occasional handling, fingering, and feeling." She offers nothing else in support of her conclusions. She repeatedly points to medical records that don't address limitations of hands and arms.

(Doc. 11, pp. 10-15) (all errors in original). We interpret Plaintiff as asserting that the ALJ's decision is unsupported by substantial evidence because she discounted all the medical opinions in the record as to her fingering RFC finding and engaged in lay interpretation of the medical evidence.

In response, the Commissioner argues:

Plaintiff appears to insist that because the ALJ's RFC finding as to his ability to engage in fingering (fine manipulation) is not supported by a medical opinion, the ALJ was required to order another consultative physical exam (Pl.'s Br. at 10-12). He is incorrect.

The current regulations explicitly provide that an ALJ, not a physician, makes the ultimate RFC determination. *See* 20 C.F.R. § 416.946(c) (the ALJ "is responsible for assessing your [RFC]"); 20 C.F.R. § 416.946(d)(2) ("Although we consider opinions from medical sources on issues such as . . ., your [RFC] . . ., the final responsibility for deciding these issues is reserved to the Commissioner"); 416.945(a) ("We will assess your [RFC] based on all the relevant evidence in your case record") (emphasis added). In following these regulations, the Third Circuit confirmed in *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d

356, 361 (3d Cir. 2006) that the ALJ "is not precluded from reaching RFC determinations without outside medical expert review of each fact incorporated into the decision." "[T]he regulations do not require ALJs to seek outside expert assistance." *Id*. (emphasis added).

Courts in this district have also held that an ALJ does not require a matching medical opinion to assess the RFC. For example, in *Rathfon v. Berryhill*, No. 4:17-cv-01264, 2019 WL 5859812, at *2 (M.D. Pa. Mar. 29, 2019) Judge Brann found no error where the ALJ discounted the medical opinions in the record. And in *Myers v. Berryhill*, 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019), Judge Brann explained that:

> Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching "opinion" evidence in order to fashion a claimant's RFC. The controlling regulations are explicit that the formulation of a claimant's RFC from the broad record before him is an administrative responsibility for the ALJ, not a treating or other physician.

*Id*. These decisions demonstrate the Third Circuit's correct interpretation of the regulations and refusal to create a "categorical rule" with respect to the relationship between medical opinion evidence and the RFC. The Circuit's "case-by-case" approach, allowing the ALJ to assess the RFC in the absence of a matching medical opinion, is consistent with the approach promulgated by the Supreme Court. *Biestek*, 139 S. Ct. at 1156-57 (a claimant "goes wrong" by "pressing for a categorical rule," and the substantiality inquiry is "case-by-case").

Here, as discussed above, the ALJ reasonably assessed Plaintiff's RFC with regard to the use of his hands, based on the record before her, as directed by the regulations. Moreover, because the record contained sufficient evidence for the ALJ to make this determination, the ALJ was not required to order another consultative exam as proposed by Plaintiff. *See* 20 C.F.R. § 416.919a ("We may purchase a consultative examination to try to resolve an inconsistency in the evidence, or when the evidence as a whole is insufficient to allow us to make a determination on your claim") (emphasis added); 20 C.F.R. § 416.917 ("we may ask you to have one or more . . . examinations" if the record is insufficient to make a decision) (emphasis added); *see also*

*Thompson v. Halter*, 45 F. App'x 146, 149 (3d Cir. 2002) ("The decision to order a consultative examination is within the sound discretion of the ALJ[.]")

(Doc. 13, pp. 14-17).

Plaintiff's reply to the Commissioner's arguments reasserts generally that the ALJ's RFC is not supported by substantial evidence and no medical opinion supports the ALJ's conclusion:

> The ALJs failure to attempt to secure medical opinion which supports her opinion that notwithstanding the Plaintiff's multiple medical problems, he is capable full-time work, is raised not to suggest that an ALJ has some obligation to seek medical opinion beyond the record, but to point out that the existing record provides an inadequate basis for denying Plaintiff's claim, as concluded in Judge Arbuckle's decision prior to remand. Yet the ALJ ignored his decision and after remand decided the case the same way without any additional medical evidence or opinion. Neither the ALJ's decision nor the Defendant's brief refers to medical opinion supporting the ALJ's conclusions.
>
> In my original brief in this case, I made reference to a long line of Third Circuit decisions requiring that the ALJ's decision be based on competent medical evidence. *Burns vs Colvin*, 156 F.Supp 579, 583 (1988) It goes too far to interpret the revision of *20 CFR 1520* as dispensing with the need for medical evidence supporting the ALJ's decision.

(Doc. 15, pp. 2-3).

As the parties appear to agree that the ALJ is not obligated to order a consultative exam, we do not address this issue.[23]

As to Plaintiff's argument that the ALJ's decision is unsupported by substantial evidence because she discounted all the medical opinions in the record and engaged in lay reinterpretation of the medical evidence with respect to Plaintiff's residual functional capacity to finger, there is no dispute that it is the ALJ's duty to assess a claimant's RFC.[24] Further, the Commissioner's regulations and Third Circuit caselaw are clear that an ALJ must consider more than just medical opinions when evaluating a claimant's RFC.[25] Although objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include

---

[23] The parties are correct that the ALJ is not obligated to order a consultative exam. *See* 20 C.F.R. § 416.919a(a) and (b); 20 C.F.R. § 416.917; *Thomas v. Halter*, 45 Fed. App'x 146, 149 (3d Cir. 2002).

[24] 20 C.F.R. § 404.1546(c); 20 CFR 416.946(c).

[25] 20 C.F.R. § 404.1545(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 404.1512(b) (explaining that "evidence" is "anything you or anyone else submits to us or that we obtain that relates to your claim."); 20 C.F.R. § 416.945(a)(3) ("We will assess your residual functional capacity based on all of the relevant medical and other evidence."); 20 C.F.R. § 416.912(b) ("Before we make a determination that you are not disabled, we will develop your complete medical history for at least the 12 months preceding the month in which you file your application unless there is a reason to believe that development of an earlier period is necessary or unless you say that your disability began less than 12 months before you filed your application."); *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) ("In making a residual functional capacity determination, the ALJ must consider all evidence before him.").

findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, as a practical matter such documents do not always contain this information.

Further,

It is well established that an ALJ "is not free to set his own expertise against that of a physician who presents competent evidence. *Ferguson v. Schweiker*, 765 F.2d 31, 37 (3d Cir. 1985). In cases where the ALJ does not give any significant or great weight to any medical opinion, the Court has found that the ALJ "seemingly interpreted the medical evidence of record, and substituted her own opinion for that of a medical one in arriving at [a] Plaintiff's RFC." *McKay v. Colvin*, No. 3:14-CV-2020, 2015 WL 5124119, *17 (M.D. Pa. Aug. 13, 2015) . . . .

. . . .

It is not error in and of itself to disagree with the opinion of a medical professional. However, it is error to find physical limitations in excess of any found by a medical professional, if a medical opinion is contained in the record. *See Cobourn v. Colvin*, No. 1:14-CV-01292, 2015 WL 5785733, at *7 (M.D. Pa. Sep. 30, 2015); *Paisley v. Colvin*, No. 1:14-CV-01656, 2015 WL 5012463, at *19 (M.D. Pa. Aug. 20, 2015); *Kester v. Colvin*, No. 3:13-CV-02331, 2015 WL 1932157, at *3 (M.D. Pa. Apr. 21, 2015); *Duvall–Duncan v. Colvin*, 1:14–CV–17, 2015 WL 1201397, at *11 (M.D. Pa. Mar. 16, 2015); *McKean v. Colvin*, 150 F. Supp. 3d 406, 418 (M.D. Pa. 2015); *Hawk v. Colvin*, 1:14–CV–337, 2015 WL 1198087, at *12 (M.D. Pa. Mar. 16, 2015); *Bloomer v. Colvin*, 3:13–CV–00862, 2014 WL 4105272, at *5 (M.D. Pa. Aug. 19, 2014); *House v. Colvin*, 3:12–CV–02358, 2014 WL 3866072, at *8 (M.D. Pa. Aug. 6, 2014); *Muhaw v. Colvin*, CIV.A. 3:12–2214, 2014 WL 3743345, at *15 (M.D. Pa. July 30, 2014); *Maellaro v. Colvin*, 3:12–CV–01560, 2014 WL 2770717, at *11 (M.D. Pa. June 18, 2014); *Arnold v. Colvin*, 3:12–CV–02417, 2014 WL 940205, at *4 (M.D. Pa. Mar. 11, 2014); *Gormont v. Astrue*, 3:11–CV–02145, 2013 WL 791455, at *7 (M.D. Pa. Mar. 4, 2013); *Kaumans v. Astrue*, 3:11–CV–01404, 2012 WL 5864436, at *12 (M.D. Pa. Nov. 19,

2012); *Troshak v. Astrue*, 4:11–CV–00872, 2012 WL 4472024, at *7–8 (M.D. Pa. Sept. 26, 2012); *Shedden v. Astrue*, 4:10–CV–2515, 2012 WL 760632, at *11 (M.D. Pa. Mar. 7, 2012).[26]

"Federal courts have repeatedly held that an ALJ cannot speculate as to a Plaintiff's RFC; medical evidence speaking to a claimant's functional capabilities that supports the ALJ's conclusion must be invoked."[27] Thus, the reality in Social Security cases is that "[r]arely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[28]

Turning to the ALJ's RFC finding regarding Plaintiff's ability to use his hands, the ALJ limited Plaintiff "to occupations that require no more than occasional pushing or pulling with the upper extremities to include the operation of hand levers." (Admin. Tr. 687; Doc. 10-8, p. 13). (Admin. Tr. 688-690; Doc. 10-8, pp. 14-16). The ALJ included no other manipulative limitations in the RFC regarding Plaintiff's ability to finger. In doing so, the ALJ found unpersuasive all three medical opinions addressing this manipulative limitation. I note that during her description of Plaintiff's treatment records, the ALJ frequently observed that "there is [sic] no

---

[26] *Decker v. Berryhill*, No. 1:17-CV-00945, 2018 WL 4189662, at *6 (M.D. Pa. June 8, 2018), *report and recommendation adopted*, No. 1:17-CV-945, 2018 WL 4184304 (M.D. Pa. Aug. 31, 2018).

[27] *Biller v. Acting Comm'r of Soc. Sec.*, 962 F.Supp.2d 761, 779 (W.D. Pa. 2013).

[28] *McKean v. Colvin*, 150 F.Supp.3d 406, 418 (M.D. Pa. 2015).

objective deficits related to the hands in the above treatment records." (Admin. Tr. 688-693; Doc. 10-8, pp. 14-19).

On October 19, 2018, Plaintiff underwent a physical consultative examination with Dr. David Lindsay. (Admin. Tr. 498-503; Doc. 10-7, pp. 221-226). At this examination, Dr. Lindsay noted that Plaintiff complained of numbness and tingling in both of his upper extremities, experiencing weakness in his hands, cramping of his hands when holding something for more than a minute causing him to drop whatever he is holding, and shakiness in his hands. (Admin Tr. 498-499; Doc. 10-7, pp. 221-222). Upon physical examination, Dr. Lindsay noted in his section on fine motor activity of hands that, "hand and finger dexterity were intact, but limited in strength. He also had a tremendous tremor in his fingers. His grip strength was 4/5 bilaterally. He had a difficult time buttoning a button, but he was able to zip and use the Velcro strap. He was unable to tie a shoelace." (Admin. Tr. 502; Doc. 10-7, p. 225). Dr. Lindsay then opined that Plaintiff could occasionally finger. (Admin. Tr. 507; Doc. 10-7, p. 230).

The ALJ found this opinion "not persuasive." (Admin. Tr. 691, Doc. 10-8, p. 17). As to the use of hands restrictions, the ALJ wrote:

> In terms of use of the upper extremities, the findings of . . . slight reduction in grip and related deficits to buttons and shoe tying do not support a reduction to occasional handling, fingering, and feeling . . . . In addition, the undersigned notes the degree of limitation in this opinion is also inconsistent with the objective clinical findings from the

treatment records, which indicate the claimant . . . had full muscle strength and intact sensation in the upper and lower extremities and had no objective deficits to the hands (Exhibits C11F, Pg. 12, C30F, Pg. 4 and C33F, Pg. 5). The hand limitations are also inconsistent with subsequent EMG testing that showed only a mild left median neuropathy with no signs of carpal tunnel or cervical radiculopathy (C40F, Pgs. 18-19). Further, this extreme level of limitation was based on a one-time examination during which the claimant appeared more limited than at the examinations by his treating providers and is inconsistent with the conservative level of treatment in the record. As such, this opinion was not persuasive when forming the residual functional capacity.

(Admin. Tr. 691-692; Doc. 10-8, pp. 17-18).

On November 28, 2018, Dr. Bonita reviewed Plaintiff's records and complete a physical RFC assessment. (Admin. Tr. 141-158; Doc. 10-3, pp. 38-55). Dr. Bonita opined that Plaintiff could occasionally finger bilaterally. (Admin. Tr. 151; Doc. 10-3, p. 48).

The ALJ found Dr. Bonita's opinion was partially persuasive. She determined the opinion regarding Plaintiff's ability to finger was unpersuasive. (Admin. Tr. 696; Doc. 10-8, p. 22). The ALJ wrote:

This opinion was only partially persuasive. It was persuasive to the extent that it was supported by and consistent with the entirety of the evidence of record. The explanation of the opinion consists of portions of various medical evidence in the record and reference to activities of daily living, which would support many of the limitations. However, the fingering limitation is not specifically explained and apparently, the evidence in support of it is from the one-time consultative examination discussed above. These findings from one examination in 2018 are not sufficient to support this limitation in comparison to the objective findings in the treatment records, which show full muscle strength and

Page 22 of 31

intact sensation in the upper extremities and EMG findings that showed only a mild left median neuropathy with no signs of carpal tunnel or cervical radiculopathy (Exhibits C33F, Pg. 5 and C40F, Pgs. 18-19). In addition, these limitations are inconsistent with the treatment at the time and with the subsequent years of treatment, which shows no specific treatment related to the hands over the longitudinal period or objective explanation or basis for tremors. The undersigned include supported push/pull/use of hand lever limitations as provided in the residual functional capacity above to give the claimant every benefit of the doubt given these findings. However, these findings do not support a limitation to occasional fingering.

(Admin. Tr. 696-697; Doc. 10-8, pp. 22-23).

Finally, Dr. Chang, Plaintiff's treating physician, submitted a medical opinion dated May 5, 2019. (Admin. Tr. 611; Doc. 10-7, p. 334). Dr. Chang opined that Plaintiff must avoid the repetitive hand motions of grasping and fine manipulation in his right hand. *Id*. On October 19, 2022, Dr. Chang provided an updated opinion, stating that Plaintiff was unable to use his hand. (Admin. Tr. 1015; Doc. 10-13, p. 23).

The ALJ found these opinions "not persuasive because they were not well explained." (Admin. Tr. 695; Doc. 10-8, p. 21). The ALJ wrote:

These opinions were not persuasive because they were not well explained. The opinion from May 5, 2019 lists reasons for the opinion as balance issues, headaches and ambulates with a cane, which does not explain the limits to use of the right hand . . . . In addition, the limitation to use of the right upper extremity and then no use of the hands is inconsistent with findings of full muscle strength, only slightly reduced grip strength and EMG findings that showed only a mild left median neuropathy with no signs of carpal tunnel or cervical radiculopathy (Exhibits C6F, C33F, Pg. 5 and C40F, Pgs. 18-19). As such, these

opinions were not persuasive in forming the residual functional capacity.

(Admin. Tr. 695; Doc. 10-8, p. 21).

In sum, the ALJ's reasons both for rejecting all the medical opinions regarding Plaintiff's residual functional capacity to finger, and in support of her RFC determination including no manipulative limitation as to fingering are: (1) the slight reduction in grip and deficits in buttoning and tying shoes not justifying a reduction to occasional fingering; (2) the objective clinical findings in treatment records not recording objective deficits to the hands; (3) clinical records noting full muscle strength in the upper extremities, negative Spurling's sign and intact upper extremity sensation; (4) the subsequent EMG revealing only a mild left median neuropathy with no signs of carpal tunnel or cervical radiculopathy; (5) the fingering limitations being opined based on a one time observation of a tremor at the consultative examination; and (6) the fingering limitations being inconsistent with the conservative level of treatment in the record and lack of treatment to the hands or objective explanation of the basis for the tremors. (Admin. Tr. 691-697; Doc. 10-8, pp. 17-23).

As to the ALJ's reliance on the objective clinical findings in treatment records not recording objective deficits to the hands; the clinical records noting full muscle strength in the upper extremities, negative Spurling's sign and intact upper extremity

sensation; and the conservative level of treatment in the record and lack of treatment to the hands or objective explanation of the basis for the tremors, these records do not discuss Plaintiff's ability to perform specific functions such as fingering. While these records may be useful and properly relied on in explaining the discounting of the medical opinions, they are not evidence of Plaintiff's ability to finger (or perform any other functions). Again, while objective medical evidence and treatment records are relevant to an ALJ's RFC assessment and, *if* they include findings about a claimant's functional abilities may be sufficient to support specific findings in an RFC assessment on their own, the treatment records the ALJ cited to in this case do not include those findings and therefore do not support her fingering RFC determination.

As to the ALJ's statement that "the slight reduction in grip and related deficits to buttons and shoe tying do not support a reduction to occasional . . . fingering," this is the ALJ's own opinion of the medical evidence based upon her lay interpretation of that evidence. (Admin. Tr. 691; Doc. 10-8, p. 17). Both Dr. Lindsay and Dr. Bonita interpreted this same evidence and, as medical professionals, came to the conclusion that this evidence supported the need for a limitation to occasional fingering. (Admin. Tr. 151, 507; Doc. 10-3, p. 48; Doc. 10-7, p. 230). "Although an ALJ is entitled to resolve conflicts in the evidence and determine the ultimate question of disability, as a lay person, the ALJ is not permitted to interpret raw

medical data when evaluating a claimant's functional capacity."[29] And "'Judges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor' because 'lay intuitions about medical phenomena are often wrong.'"[30] The ALJ's apparent belief that it does not seem to her as though slight reduction in grip and deficits in buttoning and shoe tying should support a limitation to occasional fingering is an opinion formed from her own lay interpretation of the medical evidence. This is impermissible. The ALJ's lay interpretation of Plaintiff's diminished grip strength and deficits in buttoning and shoe tying do not support the determination of her fingering RFC.

Finally, the ALJ also lay interprets the EMG to support her fingering RFC determination. (Admin Tr. 690-696; Doc. 10-8, pp. 16-22). The ALJ notes numerous times that the limitations in fingering are "inconsistent with subsequent EMG testing that showed only a mild left median neuropathy with no signs of carpal tunnel or cervical radiculopathy (C40F, Pgs. 18-19)." (Admin Tr. 692, 690-696; Doc. 10-8, pp. 18, 16-22). The ALJ is correct that the "diagnosis" section of the EMG results does indicate left median nerve neuropathy and no evidence of carpal tunnel. (Admin Tr. 1167; Doc. 10-13, p. 175). This section also notes mild left median motor axonal

---

[29] *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017).

[30] *Ralph v. Colvin*, No. 1:14-CV-01230, 2015 WL 2213576, at *15 (M.D. Pa. May 11, 2015) (quoting *Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990)).

neuropathy, which the ALJ does not mention. *Id*. Problematically for the ALJ, "these diagnostic [ ] studies do not speak by themselves to [Plaintiff's] functional limitations affecting [his] ability to work. Interpreting the impact of these diagnostic findings on [Plaintiff's] limitations requires medical expertise."[31] No such interpretation is cited to by the ALJ. Thus, the ALJ's conclusion that the EMG contradicts the medical opinions in the record and supports an RFC including no limitations to fingering is based on her impermissible lay interpretation of a medical diagnostic study and therefore does not support her fingering RFC determination.[32]

Again, "[i]t is not error in and of itself to disagree with the opinion of a medical professional."[33] An RFC assessment, however, is not supported by substantial evidence where an ALJ assesses a lesser degree of limitation than found by any medical professional without citing to another proper type of evidence that supports his or her assessment.[34] In his argument that it is the ALJ who makes the RFC determination and that an ALJ does not require a matching medical opinion to assess the RFC,

> the Commissioner appears to conflate the concept of the ALJ being the determiner of the RFC, as the Third Circuit held in *Chandler*, with the

---

[31] *Miller v. Saul*, No. CV 19-5218, 2020 WL 3498136, at * 5 (E.D. Pa. June 29, 2020).

[32] *Phillips v. Berryhill*, No. CV 15-5204, 2017 WL 2224931, at *4 (E.D. Pa. May 22, 2017).

[33] *Decker*, 2018 WL 4189662, at *6.

[34] *Id*. (listing cases).

concept of an ALJ's determination being without substantial evidence due to a lack of medical opinions in the record. Holding that an ALJ must rely on some medical expert's opinion to interpret the medical evidence before them does not necessarily mean that a doctor is now determining the RFC. Rather, such a holding safeguards that an ALJ's ultimate RFC determination is reached with the benefit of a medical expert's opinion. Without any medical opinion instructing the ALJ on how to interpret the medical evidence in the record, the ALJ is left to his own lay impression of how the medical evidence should be interpreted.[35]

That is what happened here. In this case the ALJ rejected all medical opinions about Plaintiff's ability to finger. While the ALJ attempted to support her finding that Plaintiff did not need fingering limitations with other evidence from the record, with no medical opinion supporting her fingering RFC determination, the ALJ was left to her own lay interpretations of the evidence which she then relied on to support her determination. Thus, the ALJ's decision is not supported by substantial evidence and remand is required.

To the extent Plaintiff alleges further errors, given that the Court finds it necessary to remand Plaintiff's case because the ALJ's decision is not supported by substantial evidence the Court will not address those remaining claims of error.[36]

---

[35] *Falu v. Kijakazi*, No. 3:21-CV-2061, 2023 WL 6276708, at *4, n.4 (M.D. Pa. Sept. 26, 2023).

[36] *See Burns v. Colvin*, 156 F.Supp.3d 579, 598 (M.D. Pa. Dec. 30, 2015) (Cohn, M.J.), *report and recommendation adopted*, 156 F. Supp. 3d at 582 (M.D. Pa. Jan. 13, 2016) (Kane, J.) (explaining that "[a] remand may produce different results on these claims, making discussion of them moot.").

## C.   WHETHER THE COURT SHOULD ORDER AN AWARD OF BENEFITS

Plaintiff asks that instead of remanding for further proceedings the Court remand with instructions that benefits be awarded with a period of disability commencing May 24, 2018. (Doc. 11, p. 15). In support of this, Plaintiff asserts that he "initially applied for benefits in 2013, has had 4 ALJ hearings, and this is his third trip to Federal Court." *Id*. This is a misleading summary.

Plaintiff filed his first applications for benefits under Title II and Title XVI in 2013 and was found not to be disabled. After having his applications denied at all levels of administrative review, Plaintiff filed a Complaint in this Court.[37] The undersigned recommended the Commissioner's decision denying Plaintiff's benefits as to those applications be affirmed in a Report and Recommendation that was then adopted by Judge Mariani.[38] Plaintiff then "decided to refile for just SSI, this time with better evidence, rather than appeal." (Doc. 11, p. 2).

As explained previously, this is Plaintiff's second time in Federal court as to his second Title XVI application. After having his application denied at all levels of

---

[37] Complaint, *Bair v. Colvin*, No. 3:16-CV-1331, ECF No. 1 (M.D. Pa. June 28, 2016).

[38] *Bair v. Colvin*, No. 3:16-CV-1331, 2018 WL 11404647 (M.D. Pa. Oct. 10, 2018), *report and recommendation adopted sub nom. Bair v. Kijakazi*, No. 3:16-CV-1331, 2022 WL 686623 (M.D. Pa. Mar. 8, 2022).

administrative review, Plaintiff filed a Complaint in this Court.[39] The undersigned previously recommended the Commissioner's decision denying Plaintiff benefits be remanded in a Report and Recommendation that was then adopted by Judge Mannion.[40] After rehearing, the ALJ again found Plaintiff not disabled and Plaintiff filed this case.

A court-ordered "award [of] benefits should be made only when the administrative record of the case has been fully developed and when substantial evidence on the record as a whole indicates that the claimant is disabled and entitled to benefits."[41] "Moreover, we should hesitate to add further abeyance and remand a case where, like many others involving disability determinations, [it] has suffered considerable inexplicable delays."[42] In this case, we are unable to conclude that "substantial evidence on the record as a whole indicates [Plaintiff] is disabled and entitled to benefits."[43] Nor can we conclude this case has "suffered [from]

---

[39] Complaint, *Bair v. Kijakazi*, 4:20-CV-1970, ECF. No. 1 (M.D. Pa. Oct. 26, 2020).

[40] *Bair v. Kijakazi*, No. 4:20-CV-1970, 2022 WL 682966 (M.D. Pa. Feb. 16, 2022), *report and recommendation adopted*, No. CV 4:20-1970, 2022 WL 675803 (M.D. Pa. Mar. 7, 2022).

[41] *Podedworny v. Harris*, 745 F.2d 210, at 221-22 (3d Cir. 1984) (citing *Tennant v. Schweiker*, 682 F.2d 707, 710 (8th Cir. 1982); *Lewin v. Schweiker,* 654 F.2d 631, 635 (9th Cir. 1981)).

[42] *Henderson v. Colvin*, No. 12-CV-05316, 2014 WL 5431111, at *13 (E.D. Pa. Oct. 27, 2014) (quoting *Morales v. Apfel*, 225 F.3d 310, 320 (3d Cir. 2000) (citation omitted)) (internal quotation marks omitted).

[43] *Podedworny*, 745 F.2d at 221-22.

considerable inexplicable delays."[44] Therefore, we find a court-ordered award of benefits is inappropriate at this time.

## V.    CONCLUSION

Accordingly, I find that Plaintiff's request for relief be Granted as follows:

(1)    The Commissioner's final decision is VACATED.

(2)    This case will be REMANDED to the Commissioner for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

(3)    Final judgment in Eric. D. B.'s favor will be issued separately.

(4)    An appropriate order will be issued.

Date: March 29, 2024                      BY THE COURT

                                          _s/William I. Arbuckle_
                                          William I. Arbuckle
                                          U.S. Magistrate Judge

---

[44] *Morales*, 225 F.3d at 320.